## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY,<br>(f/d/b/a GE APPLIANCES DIVISION),<br>a New York Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 08 C 1618 |
| vs. | ) ) ) | |
| GUINEY DELIVERY SERVICE, INC.,<br>an Illinois Corporation, | ) ) ) | Magistrate Judge Keys<br>Judge Marovich |
| Defendant. | ) ) | |

### DEFENDANT GUINEY DELIVERY SERVICE, INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF
### <u>MOTION TO DISMISS, TRANSFER VENUE, OR STAY</u>

NOW COMES Guiney Delivery Service, Inc. (hereinafter "Guiney"), and by and through

its attorneys, ICE MILLER LLP, and respectfully submits this Memorandum of Law in Support

of its Motion to Dismiss, Transfer Venue, or Stay pursuant to 9 U.S.C. § 4, F.R.C.P. 12(b)(3),

and 28 U.S.C. § 1406(a). In support thereof, Guiney states the following:

### I.

### INTRODUCTION

Plaintiff, General Electric Company (hereinafter "GE"), has unquestionably manifest its

assent to arbitrate any claims against Guiney. The "Product Home Delivery Agreement" requires

that any dispute arising or related to the performance of the terms of the Agreement be arbitrated.

Further, in accordance with the terms of the Agreement, the place of arbitration shall be

Louisville, Kentucky and that the parties agreed that the federal and state courts located in the

State of Kentucky shall have exclusive jurisdiction brought to enforce the arbitration provision,

and each party irrevocably submits to the jurisdiction of said courts. As such, for the reasons

stated below, should dismiss this cause of action or, in the alternative, transfer it to the State of Kentucky.

**The Arbitration Agreement and Forum Selection Clause**

Plaintiff's Complaint alleges that Guiney breached the "Product Home Delivery Agreement" (hereinafter "Delivery Agreement") when it failed to deliver certain appliances to various GE customers. However, the Delivery Agreement the parties entered into and that is the subject of this dispute contains a "Dispute Resolution" clause which requires any disputes arising out of the performance of the contract to be arbitrated in Louisville, Kentucky. See ¶ 20(b) of the Delivery Agreement attached hereto and incorporated herein as Exhibit A. Specifically, the Delivery Agreement, in relevant part, states as follows:

> 20.    DISPUTE RESOLUTION. All disputes controversies and questions directly and indirectly arising under, out of, in connection with or in relation to this Agreement or its subject matter, including without limitation, all disputes, controversies and questions relating to the validity, negotiation, interpretation, construction, performance, termination and enforcement of this Agreement (a "Dispute"), shall be resolved in accordance with this section, which shall be the sole and exclusive procedure for the resolution of any such Dispute.
>
> (a)    …
>
> (b)    Any Dispute which has not been resolved by negotiation…at the request of either party, be finally settled  by arbitration under the Center for Public Resource Rules for Non-Administered Arbitration of Business Disputes in effect on the date of this Agreement, by three independent and impartial arbitrators, none of whom shall be appointed by either party.  …the law applicable to the validity of this arbitration provision, the conduct of the arbitration, the challenge to or enforcement of any arbitral award or order, and any other question of arbitration law or procedure shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. sections 1-16;  …**The place of arbitration shall be Louisville, Kentucky. The parties agree that the federal and state courts located in the State of Kentucky shall have exclusive jurisdiction…and each party submits to the jurisdiction of said courts…(emphasis added).**

See ¶ 20 of Exhibit A.

Thus, under the terms of the Delivery Agreement, any claim arising out of or relating to the Delivery Agreement, shall be settled by arbitration. There is no question that GE's claim arises out of the Delivery Agreement. Further, the place of arbitration shall be Louisville, Kentucky. Finally, the parties have already irrevocably submitted to the jurisdiction of the federal and state courts located in Kentucky. The parties executed this agreement in June 2005. Therefore, GE assented to the terms of the Agreement, including the term regarding mandatory arbitration and the language concerning Kentucky as the being the proper venue to bring such claims.

## II.

### THIS ACTION SHOULD BE DISMISSED UNDER RULE 12(b)(3) AND 9 U.S.C.§ 4

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, an aggrieved party may compel arbitration whenever an opposing party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4 (2006). The FAA manifests a liberal federal policy favoring arbitration agreements, and any doubts regarding the arbitrability of a dispute are to be resolved in favor of compelling arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 941, 103 S. Ct. 927, 941 (1983); *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005).

However, where, as here, a governing arbitration agreement contains a mandatory forum selection clause that requires arbitration in another district, a district court should dismiss or stay the action. *Snyder v. Smith*, 736 F.2d 409, 418 (7th Cir. 1984) (Under the [FAA], a district court has no power to order arbitration to take place outside of its own district.) *rev'd on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A dismissal or stay is the appropriate remedy because, "where the arbitration agreement contains a forum selection clause, only the

district court in that forum can issue a §4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).

The Seventh Circuit has explained that dismissal for improper venue under Fed. R. Civ. P. 12(b)(3) is preferable to a stay under these circumstances because the failure to dismiss "raises the disturbing spectre of forum shopping" and "undermines the certainty and predictability" of arbitration agreements. *Id.* at 330. *See also Local 73, Serv. Employees Int'l Union v. Argonne Nat'l Lab.*, No. 05 C 2772, 2006 U.S. Dist. LEXIS 25928, at *9 (N.D. Ill. Mar. 13, 2006) ("The Seventh Circuit has held that the district court's dismissal of a case under 12(b)(3) due to a valid arbitration clause is appropriate.") Moreover, "[g]iven that the court cannot order arbitration...it is unclear what purpose a stay would serve." *Camp v. TNT Logistics Corp.*, No. 04-CV-1358, 2005 U.S. Dist. LEXIS 39690, at *21 (C.D.Ill.Nov.2d, 2005).

As mentioned and established above, GE's dispute with Guiney is subject to a mandatory and binding arbitration agreement, the provisions of which require that this dispute be arbitrated in Louisville, Kentucky. Accordingly, this action should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3). *See Snyder*, 736 F.2d at 418 (under the FAA, "the court must order the parties to arbitrate 'in accordance with the terms of the agreement;' one term is the parties' forum selection clause") (citations omitted).

### III.

### THIS ACTION SHOULD BE DISMISSED OR TRANSFERRED TO KENTUCKY

Under 28 U.S.C. § 1406(a), a district court may dismiss or transfer any case that is filed in the wrong venue "if it is in the interests of justice to do so." *Claber v. Lowe's Co., Inc.* No. 98 C 4760, 1999 U.S. Dist. Lexis 3626, at *11 (N.D. Ill. Mar. 19, 1999). Specifically, Section 1406 (a) provides that "the district a district in which is filed a case laying venue in the wrong division

4

or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Northern District of Illinois is the wrong division or district for this action because the forum selection language contained in the Agreement unequivocally establishes that the proper venue is in Kentucky.

"It is well established that contractual forum selection clauses are prima facie valid." *Claber*, 1999 U.S. Dist. LEXIS 3626, at *7. *Accord Moraites v. Royal Caribbean Cruises, Ltd.*, No. 94 C 3762, 1994 U.S. Dist. Lexis 10474, at *2 (N.D. Ill. July 27, 1994). As stated by the Seventh Circuit, "the law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced." *Paper Express Ltd. V. Pfankuch Maschien GmbH,* 972 F.2d 753, 757 (7th Cir. 1992). *Accord Claber*, 1999 U.S. Dist. LEXIS 3626, at *7-10 (transferring case under § 1406(a) because forum selection clause in parties' agreement was "clearly dispositive"). Thus, such clauses must be enforced unless procured by fraud or overreaching, or where enforcement would result in "serious inconveniences." *Claber*, 1999 U.S. Dist. LEXIS 3626, at *7 (quoting *Frediani & Delreco, S.P.A. v. Gina Imports, Ltd.*, 870 F. Supp. 217, 220 (N.D. Ill. 1994).

Plaintiff's dispute with Guiney is subject to a mandatory and binding Agreement, pursuant to which the parties have already agreed that "the federal and state courts located in Kentucky shall have exclusive jurisdiction over any action brought to enforce this arbitration provision, and each party irrevocably submits to the jurisdiction of said courts." See ¶ 20(b) of the Agreement. Accordingly, this action was filed in the wrong venue and must be dismissed or transferred to Kentucky under 28 U.S.C. § 1406(a).

**IV.**

## IF NOT DISMISSED OR TRANSFERRED, THIS MATTER SHOULD BE STAYED PENDING ARBITRATION

Even if this action is not dismissed or transferred, it should nonetheless be stayed pending arbitration. As noted above, when a binding arbitration agreement requires arbitration in another state, courts generally favor dismissal. *Camp*, 2005 U.S. Dist. LEXIS 3960, at *20-21. On occasion, however, Illinois district courts have held that a stay pending arbitration may nonetheless be appropriate. *See, e.g., Snyder*, 736 F.2d at 420 (in situations such as are present here, "the district court should dismiss the petition or, upon motion, stay its proceedings"); *Camp*, 2005 U.S. Dist. LEXIS 3960, at *20-21 (refusing to consider a stay because it was not requested by either party, but giving the parties an opportunity to do so); *Tarrson v. BLP Partners*, LP, No. 01 C 7761, 2002 U.S. Dist. LEXIS 17880, at *5-6 (N.D. Ill. Sept. 18, 2002) (staying action and giving the defendant thirty days to compel arbitration in the jurisdiction specified in the parties' arbitration agreement). Accordingly, if this matter is not dismissed or transferred, Guiney alternatively requests that it be stayed and that Guiney be provided with sufficient time to compel arbitration in Kentucky.

WHEREFORE, Defendant Guiney Delivery Service, Inc. prays that this motion be granted and that the Court dismiss Plaintiff's Complaint. If this action is not dismissed, Defendant asks that the Court transfer it to the United States District Court for the Western District of Kentucky. If this action is not dismissed or transferred, Defendant prays that it be stayed pending arbitration. Defendant further requests that it be awarded any other relief to which it may be justly entitled.

Dated: May 1, 2008

Respectfully submitted,

GUINEY DELIVERY SERVICE, INC.


By:  /s/ Thomas J. Hayes
          One of Its attorneys

Bart T. Murphy (#6181178)
Thomas J. Hayes (#6280179)
Ice Miller LLP
2300 Cabot Drive, Suite 455
Lisle, IL 60532
630.955.0555
630.955.0662 (facsimile)


C/65369.1

# **EXHIBIT A**

## PRODUCT HOME DELIVERY AGREEMENT

This Product Home Delivery Agreement (the "Agreement") is made and entered into as of June 15, 2005, by and between the General Electric Company ("GE"), a New York corporation, acting through its GE Consumer & Industrial business component located at Appliance Park, Louisville, Kentucky 40225 ("GE"), and Guiney Delivery Serives, Inc., located at 4102 Bulls Bay Highway Jacksonville, FL 32219 ("Vendor").

WHEREAS, GE desires the timely and careful delivery of appliances and other goods on behalf of GE (the "Products"), which includes the unloading, handling, staging, conveyance by truck, delivery, unpacking, setting into place, installing, haul away, reloading, packing, return and storage (collectively, to "Home Delivery" or the "Home Delivery Services", as applicable) of the Products; and

WHEREAS, Vendor has indicated a desire to perform the Home Delivery Services for GE in accordance with GE's requirements and specifications.

NOW, THEREFORE, in consideration of the mutual covenants and promises of GE and Vendor, and other good and valuable consideration, the parties agree as follows:

1.    Home Delivery Services and Exclusivity.

(a)    The amount of Products for which Home Delivery Services shall be provided hereunder shall be in the sole discretion of GE. Vendor agrees to:

(1)    Deliver the Products for GE into occupied living units and stores at specified addresses located within the geographic area delineated on Attachment 1 hereto, which is incorporated herein by reference,

(2)    Install the Products for GE into occupied living units and stores at specified addresses located within the geographic area delineated on Attachment 1.

(3)    Perform all administrative and record-keeping tasks associated with and necessary to the Home Delivery Services and the possession, identification, and tracking of the Products, and

(4)    Maintain a complete record of the Products for which Vendor provided Home Delivery Services (including model and serial number, name and address of purchaser, and date of Home Delivery Services), furnish such data to GE upon request, free of charge, in order to facilitate the locating of Products in

the possession of users and permit GE to audit such records during normal Vendor business hours at a time scheduled with Vendor.

(b)    In view of the substantial management and other expertise GE will be providing Vendor (including the GE Product Delivery System as hereinafter defined) regarding the home delivery process and to facilitate Vendor effectively providing high quality, focused Home Delivery Services for the Products, Vendor agrees except as provided in <u>Attachment 2</u> that, during the term of this Agreement, Vendor will only deliver and/or install major appliance products in homes or other residences on behalf of GE. For purposes of this provision, "major appliance products" are defined as refrigerators, freezers, clothes washers and dryers, cooking products, dishwashers, air conditioners, water softeners, water filtration products and water heaters.

2.    <u>Facility</u>.  Vendor shall provide a safe, clean and dry facility and shall employ such Product handling and storage practices as will ensure that the Products in Vendor's possession will not be lost, stolen, damaged or otherwise have their value diminished.  Vendor shall also provide security and fire systems adequate for the protection of the Products while in the possession of the Vendor at the facility. Recommended dock space and parking lot requirements are provided on <u>Attachment 1</u> hereto, which is incorporated herein by reference.

3.    <u>Delivery Trucks and Cellular Phone</u>.

(a)    (1)    Vendor agrees to provide delivery trucks which are to be used principally for providing Home Delivery Services for GE Products and GE designated non-GE products (the "GE Trucks").  GE Trucks must have lift-gates or ramps in proper working condition and must be in clean, like new condition. Vendor agrees to use GE Trucks for all Home Delivery Services involving GE Products and other approved non-GE products.

(2)    The color scheme and all logos, insignia, etc., appearing on GE Trucks shall be in accordance with designs approved in advance by GE.  To the extent such GE Trucks shall bear trademarks or logos of GE such use shall be governed by the provisions of Section 4 of this Agreement.

**(X) If checked, Section 3(a)(3) below shall be applicable in this Agreement.**

(3)    GE may, in its discretion and at any time during the Term of this Agreement, require Vendor to apply to the GE Trucks GE logo decals and other identifying marks which GE will provide to the Vendor at no charge.  It is and will be Vendor's responsibility and expense to have the GE Trucks painted white, if necessary.

-2-

(b)    Vendor shall provide, at its own expense, cellular phones and/or radio dispatch equipment in each GE Truck to provide customer notification calls in advance of delivery as provided in Section 8(b) of this Agreement.

## 4.    Trademark License Provisions

(a)    GE owns the trademarks "g" and "GE" in block letters (hereinafter called the LICENSED TRADEMARKS); GE has registrations thereon throughout the world; and GE has established detailed guidelines for use of such trademarks.

(b)    GE hereby grants Vendor the non-exclusive right and license to use the LICENSED TRADEMARKS on GE Trucks, provided that such use of the LICENSED TRADEMARKS is in full accordance with the designs, specifications and standards set forth from time to time in writing by GE, and provided that the type, design and quality of the appearance of the GE Trucks are approved in writing by GE prior to use thereof by Vendor. An illustrative example of a design approved for the use contemplated by this Agreement is attached hereto as Attachment 3.

(c)    (1)    Vendor undertakes and agrees to use the LICENSED TRADEMARKS only on GE Trucks in strict accordance with the provisions of Section 4(b) of this Agreement.    Vendor will not display the LICENSED TRADEMARKS on the GE Trucks in any manner which is not in accordance with said provisions.

(2)    Vendor agrees to furnish GE from time to time as requested, an opportunity to inspect the GE Trucks to which it affixes the LICENSED TRADEMARKS.    If, at any time, GE Trucks bearing the LICENSED TRADEMARKS shall, in the sole opinion of GE, fail to conform to the standards of appearance set by GE, Vendor shall, at its own cost, promptly bring such appearance into conformance or remove the LICENSED TRADEMARKS from such non-conforming GE Trucks.

(3)    Vendor shall fully indemnify and hold harmless GE against any and all claims, losses, damages, expenses or liability arising out of Vendor's use of GE Trucks bearing the LICENSED TRADEMARKS.

(4)    Vendor will use the LICENSED TRADEMARKS exclusively on GE Trucks.    Vendor shall not use the LICENSED TRADEMARKS on any other entity including but not limited to buildings, real estate, letterheads, business cards, contracts or other business documents without GE's prior written consent.    GE Trucks shall always prominently identify Vendor as the owner or operator of the trucks.

(d)    (1)    Vendor is authorized to use the LICENSED TRADEMARKS, only on GE Trucks, which as set forth in Section 3 of this Agreement are to be used principally for providing transportation services to GE or its designees. In no event, shall Vendor use the LICENSED TRADEMARKS as part of a trade name or authorize others to do so.

(2)    Vendor agrees to comply with rules set forth from time to time by GE with respect to the appearance and manner of use of the LICENSED TRADEMARKS.    Any form of use of the LICENSED TRADEMARKS not specifically provided for by such rules shall be adopted by Vendor only upon prior approval in writing by GE.

(e)    (1)    Vendor admits the validity of the LICENSED TRADEMARKS and agrees that any and all rights that might be acquired by the use of the LICENSED TRADEMARKS by Vendor shall inure to the sole benefit of GE.

(2)    Vendor further agrees not to use or register in any country any trademarks resembling or confusingly similar to the LICENSED TRADEMARKS. Whenever the attention of Vendor is called by GE to any such confusion or risk of confusion, Vendor agrees to take appropriate steps immediately to remedy or avoid such confusion or risk of confusion.  Nothing herein contained, however shall be construed as prohibiting or limiting Vendor from adopting or using any other designations or trademarks in relation to its transportation services business.

(f)    (1)    The license to use the GE LICENSED TRADEMARKS granted herein may be terminated at any time for any reason or no reason at the complete discretion of GE upon written notice to Vendor.  Unless terminated prior thereto, said license shall expire on termination or expiration of this Agreement.

(2)    Upon termination or expiration of this license to use the GE LICENSED TRADEMARKS, Vendor shall immediately halt use of any GE Trucks bearing the LICENSED TRADEMARKS and shall promptly remove the LICENSED TRADEMARKS from all such GE Trucks, which removal shall be completed within thirty (30) days following such termination or expiration, in which event, GE shall reimburse Vendor for all reasonable expenses incurred by Vendor in such removal of the LICENSED TRADEMARKS from the GE Trucks and restoration of such trucks to a plain white condition.

(3)    The following provisions of Section 4 of this Agreement shall survive any termination of Vendor's licenses and rights hereunder: (c)(3), (e)(1), (e)(2), (f)(2) and (f)(3).

(g)    The license to use the GE LICENSED TRADEMARKS may not be assigned or otherwise transferred by Vendor without the prior written consent of

- 4 -

GE, and any attempted assignment or transfer without such consent shall be null and void.

5. GE Proprietary Product Delivery Systems.

(a) GE is the owner of a unique proprietary product delivery and delivery management system, for scheduling and tracking the delivery of Products to homes or other destinations (the "GE Product Delivery System" or the "System"). The GE Product Delivery System is a method or process implemented with hardware and software, including, but not limited to, pen-based electronic scanners which are uniquely programmed to facilitate implementation of the System ("Scanners"). The use of the Scanner is described in a Scanner User Manual in the Compact Disc ("CD"). The Scanner, CD and any other information about the GE Product Delivery System or the hardware or software used in implementing the System, is considered by GE to be confidential and proprietary.

(b) GE shall provide, at no cost to Vendor, a Scanner(s), a numbered copy of the CD to enable Vendor to provide Home Delivery Services using the System.

(c) Vendor acknowledges and agrees that the System, including without limitation the Scanner and the CD is the proprietary property of GE. Vendor agrees: to use the Scanner(s) only in accordance with the CD; to not reproduce the CD or any portion thereof without the prior written approval of GE; to treat all information about the System, including but not limited to the information in the CD and any other descriptive information GE may provide or Vendor may learn about the System, as Confidential Information in accordance with Section14 of this Agreement; and to only use the Scanner(s), CD and other Confidential Information and the System for the purpose of providing Home Delivery Services to GE pursuant to this Agreement.

(d) Vendor, by signature of its authorized agent hereto, acknowledges receipt of the CD.

(e) Vendor agrees to return the Scanner(s) and the CD (and any authorized copies thereof) at any time at the written request of GE or upon termination or expiration of this Agreement. Any loss or damage to the Scanner(s) shall be the responsibility of Vendor.

6. Delivery Equipment. Recommended delivery equipment is specified on Attachment 1 hereto. GE may examine, at any time and at its option before or after this Agreement is entered into, the equipment Vendor will use in the performance of this Agreement. Vendor shall maintain the equipment, in the same or a substantially similar condition, as the equipment appeared upon the start of performance of this Agreement.

7.    Tools and Equipment. Vendor shall provide and maintain the tools and delivery equipment as specified on Attachment 1 hereto.

8.    Office Equipment and Computer Equipment.    Vendor shall have at its facility a dedicated phone line, Internet access capability, dedicated fax line and fax machine, which meets the specifications outlined in Attachment 4.A. hereto (the "Office Equipment") at all times during the Term of this Agreement. GE shall provide to Vendor, at GE's cost, a personal computer with a high-speed modem, a monitor and a printer as listed in Attachment 4.B. hereto ("Computer Equipment"). Vendor shall at all times be responsible for the maintenance and upkeep of the Office Equipment and the Computer Equipment and any loss of or damage to the Office Equipment and the Computer Equipment shall be the responsibility of the Vendor.

9.    Delivery and Installation and Handling Guidelines.

(a)    Product Installation.    All Home Delivery Services shall be performed in accordance with the procedures to be provided by GE from time to time and as demonstrated in the Installation Procedures Video Cassette, a copy of which is delivered to Vendor with a copy of this Agreement. Vendor acknowledges receipt of the Video Cassette and the procedures by execution of this Agreement.

(b)    Parts and Accessories. Vendor shall carry and maintain on the GE Trucks a reasonble inventory as specified by GE from time to time, of GE brand parts and accessories. When providing Home Delivery Services identified by service codes M931, M932, M933, M934, M935, M936, M937, M938 and M939, Vendor shall use only GE brand parts purchased directly from GE Consumer and Industrial. Vendor also shall purchase an initial supply of GE brand parts, and shall maintain an inventory of at least 2 weeks supply of such parts on hand.  GE recommends ordering 6 weeks up-front for the initial supply. If Vendor fails to maintain a supply of 2 weeks of parts on hand, GE may ship to Vendor a sufficient number of such parts for the maintainance of such supply.    When Home Delivery Services under these service codes are performed by Vendor, GE shall pay Vendor for the provided GE-brand parts, plus a $0.50 handling fee, in accordance with the fee schedule attached hereto as Attachment 5a.  GE may bill Vendor back for the cost of such parts, in accordance with attached fee schedule, in the event Vendor provides such services without using GE brand parts purchased directly from GE Consumer and Industrial.

- 6 -

(c)    Uniforms.    Vendor shall provide, at its own expense, a GE approved uniform for all delivery and warehouse personnel associated with the Home Delivery Services for the Products. All uniforms must be approved by GE in writing prior to use. Uniforms will be clean, pressed and properly sized. Shirts will be worn tucked inside pants with a belt to keep the pants above the waist. The only acceptable hats will be those issued or approced by GE. It is the responsibility of the Vendor's management to inspect and ensure compliance prior to tendering a load to a delivery agent each morning.

(d)    Customer Notice.    Vendor shall notify customers at least 24 hours prior to delivery to provide an estimated delivery time within a 4-hour time window. Vendor shall also notify customers by cellular phone and/or radio dispatch equipment 30 minutes in advance of anticipated arrival time for deliveries of Products.

(e)    Product Handling.    Vendor shall comply with the following Product handling techniques and routines:

i.    Absolutely no fork lift (blades) equipment shall be used.

ii.    Hand trucks must be in good condition and padded to avoid causing damage to the Products.

iii.    Squeeze clamp trucks and basaloid equipment should be used in moving Products.

iv.    Drop cloths, padding blankets or similar protection should be available and used on all GE Trucks to avoid damaging unpacked Products. To Deliver Products into occupied living units, Vendor agrees to use drop cloths or similar protection to avoid damaging the floors.

v.    Vendor agrees to adhere to and follow all procedures outlined in Section 9 hereof for damaged Products.

(f)    Completed Installation.    After completing the Delivery Installation Services and before leaving the site of the performance of the Delivery and Installation Services, the Vendor will provide to the customer, service contract literature and a GE supplied factory service information label, and will obtain the signature of the customer or the site supervisor, as applicable.

(g)    Hours of Operation.    Vendor's facility shall be open at a minimum from 8:00 A.M. to 5:00 P.M., Monday through Saturday, excluding holidays recognized as Scheduled Delivery Services holidays, and Vendor shall remain open and operational during the lunch hour to facilitate all Home Delivery Services.    Vendor shall provide Home Delivery Services Monday through

- 7 -

Saturday. A Vendor representative will be available by phone and able to answer all delivery-realted question anytime Vendor has a delivery vehicle on the road conducting Home Delivery Services.

(h)     Inventory. Vendor agrees to warehouse reserve stock inventory as mutually agreed to from time to time by Vendor and GE, for which GE shall pay storage charges as outlined in Attachment 5 hereto, which is incorporated herein by reference.

(i)     Inspections. GE may examine, at any time and at its option, any of the Products for which Home Delivery Services have been provided hereunder, the Computer Equipment, the scanner, the Vendor's facilities, the Home Delivery Services practices and procedures in use, and the equipment involved in the performance of this Agreement.

10.     Preparing Used or Damaged Products and Haul-Away Products.

(a)     Vendor shall follow the procedure outlined below when handling used or damaged Products and haul-away product.

(b)     Prior to transport of damaged or used Products (excluding haul-away products) to an As Is Depot, Vendor shall label all used or damaged Products as follows:

(1)     Approximately 1/4 inch of the top right corner of the serial number plate must be removed from all damaged or used Products.

(2)     All appearance damaged Products must be conspicuously marked "Appearance Damage." A stamp pad or self-adhesive stickers will be used to mark the appliance.

(3)     All service exchanged, management exchanges, educational institution replacement Products and all other used Products must be conspicuously marked "Used" in one-inch letters on the back of the appliance, or a self-adhesive sticker noting that the unit has been used must be attached to the back of the appliance.

(c)     The warranty page of the use and care booklet for all such Products must be marked "Void," removed and replaced by a copy of the Limited Functional Operable Warranty (Attachment 6).

EXCEPT FOR THE LIMITED WARRANTY SET FORTH ON ATTACHMENT 6, GE MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING ANY OF THE PRODUCTS (AND SPECIFICALLY DISCLAIMING

-8-

THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE).

(d)     All Products that are not shipped to an As Is Depot and all haul-away products must be scrapped. The serial plate must be removed from all scrap Products and all haul-away products prior to disposition. The serial plate and audit copy of the return authorization must be attached to a NO CREDIT SCRAP FORM (Attachment 7) and mailed to Post Sales at 307 North Hurstbourne Parkway, Louisville, Kentucky, for record retention. All Products and all haul-away products to be scrapped must be made completely inoperable, all CFCs and other hazardous material must be removed, the compressor must be removed and oil therein drained, and the unit shall be disposed of lawfully through proper channels such as a shredder.

In disposing of Products and all haul-away products, Vendor shall comply with all applicable federal, state and local environmental, landfill, waste management and similar laws, rules and regulations.

11.     Fees. GE shall pay Vendor for the full performance of the services to be rendered hereunder in accordance with the fee schedule attached hereto as Attachment 5. Vendor shall be paid for services by means of the GE auto-pay system ("Auto-Pay"). Payment for services on return authorizations through Auto-Pay includes pick up, handling, and delivery of used, damaged, or uncrated Products to a specified As Is Depot located within the geographic area delineated on Attachment 1. Services rendered for orders delivered to the same customer at the same address on the same day will be summed together for payment and paid in accordance with such summary. Vendor shall have a period of sixty (60) days from the date a payment is made within which to file with GE written exceptions ("Exceptions") to that payment. Failure to submit to GE any Exceptions to a payment within the sixty (60) day period shall result in that payment being deemed final and incontrovertible.

12.     Term and Termination.

(a)     The Initial Term of this Agreement shall be 3 year(s) from the effective date of this Agreement (the "Term"), unless terminated sooner as hereinafter provided. This Agreement may be renewed thereafter by a writing signed by both parties, but nothing shall be construed to obligate either party to agree to any such renewal.

(b)     Either party may terminate this Agreement, with or without cause, prior to the end of the Initial Term upon giving sixty (60) days prior written notice to the other party. Neither party shall then have any further liability of any kind to the other party except that termination hereunder shall not affect the rights or obligations of either party that may have accrued prior to such termination.

(c)     Notwithstanding the foregoing, either party shall have the continuing right to terminate this Agreement immediately upon written notice to the other party and without any further liability by either party except for rights or obligations of either party that may have accrued prior to such termination, upon the occurrence of any of the following:

(i)     A party's failure to perform its obligations hereunder, or the other party's default hereunder involves fraud or criminal wrongdoing;

(ii)    A party (A) is not paying, or is unable to, or admits in writing its inability to, pay its debts as such debts become due, (B) makes an assignment for the benefit of creditors of a substantial part of its assets, or petitions or applies to any tribunal for the appointment of a custodian, receiver or trustee for it, (C) commences any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, (D) has any such petition or application filed or any such proceeding commenced against it in which an adjudication or appointment is made or order for relief is entered, or which petition, application or proceeding remains not dismissed for a period of 30 days or more, (E) by any act or omission, indicates its consent to, approval of or acquiescence in any such petition, application or proceeding or order for relief or appointment of a custodian, receiver or trustee for all or any substantial part of its property, or (F) suffers any such custodianship, receivership or trusteeship to continue not discharged for a period of 30 days or more; or

(iii)   A party has entered against it a final, non-appealable judgment by a court of competent jurisdiction in an amount then exceeding its net worth.

(d)     Upon termination or expiration of this Agreement, the Vendor shall turn over to GE all equipment furnished to Vendor by GE hereunder, the Computer Equipment, all warehoused Products, all records and other papers or documents containing information relating to GE's business, and such supplies and other articles as may have been provided to the Vendor for the purpose of discharging its obligations hereunder. Receipt by GE of such equipment, the Computer Equipment, Products and materials shall be a condition precedent to GE's obligation to make final payment of any moneys due to the Vendor hereunder.

13.     Inventory. Vendor agrees to utilize the GE inventory control processes, as amended from time to time. Vendor shall not store in or around its facility any products or merchandise which the Vendor knows or should know could damage, destroy or contribute to the deterioration or contamination of the Products. Vendor shall be responsible for the entire cost of repairing or replacing any Products covered by this Agreement which are damaged, destroyed, lost or stolen while in the possession of the Vendor. Vendor agrees to participate in, at

- 10 -

its expense, an annual physical inventory of such Products as may be located on Vendor's premises, and GE reserves the right to conduct at reasonable times and at its discretion, additional physical inventories at GE's expense.

14.    Confidentiality.    The terms of this Agreement and any confidential information received by either party from the other party as a result of the bidding process and negotiations related to this Agreement and the performance of this Agreement are confidential (the "Confidential Information").    The term Confidential Information shall include, but not be limited to, lists and identities of current or prospective customers of GE, the terms of any GE contracts with other entities related to the Products or the Home Delivery Services, or otherwise, GE's methods of operation and product distribution, the System and any other documents or information which came into Vendor's possession as a result of the bidding process relating to or negotiation of this Agreement.    In no event may the Confidential Information be reproduced or revealed to any third party by either GE or the Vendor without the prior written consent of the other party, except as may be necessary by reason of legal, audit, accounting or regulatory requirements.    The obligations of both GE and the Vendor under this paragraph shall survive any termination or expiration of this Agreement.

15.    Insurance.

(a)    Vendor shall maintain in force during the Term of this Agreement Comprehensive General Liability Insurance (including contractual liability insurance) coverage in the following minimum amounts:

| Bodily Injury/Death | $1,000,000 each occurrence |
| Property Damage | $500,000 each occurrence/$1,000,000 in the aggregate |

(b)    Furthermore, Vendor shall maintain during the Term of this Agreement Comprehensive Automobile Liability Insurance in the following minimum amounts:

Bodily Injury - $500,000 each person/$1,000,000 each occurrence
Property Damage - $200,000 each occurrence
Employer's Liability - $200,000 each occurrence

(c)    Vendor shall require that each of its employees engaged in the Home Delivery Services have a completed current criminal background check on file with the Vendor.    The criminal background check shall, at a minimum, provide a national, state and local criminal check for all employees entering a home in the performance of Home Delivery Services. No Vendor employee with a theft-related conviction, sex-related conviction, conviction for a crime violent in nature, or felony drug-related conviction shall be permitted to enter a residence on behalf of GE. GE has the right to audit background check records to ensure

- 11 -

Vendor compliance at any time, and to review Vendor's process and results on a regular basis. Vendor and each of its employees shall be bonded with fidelity bond insurance in the amount of $25,000.

(d)    In addition, Vendor shall maintain workers' compensation and employers' liability insurance to meet statutory limits, including coverage under the Longshoremen's and Harbor Workers Act, where applicable, and should have appropriate insurance to cover any damage to or loss of the pen-based scanner equipment and Computer Equipment furnished to it by GE and the Office Equipment.

(e)    Vendor shall, upon execution of this Agreement, furnish GE with appropriate certificates of insurance concerning all coverage described in this paragraph.    All policies of insurance are subject to the following general requirements:

(i)    GE shall be named as an additional insured on all Vendor policies of insurance except workers' compensation and employers' liability insurance;

(ii)    Coverage afforded GE by Vendor's insurers shall be primary and noncontributory;

(iii)    No policy shall be canceled or subject to nonrenewal or reduction of coverage or other modification except after sixty (60) days prior written notice from the insurer to GE; and

(iv)    All insurance policies shall be underwritten by insurance companies acceptable to GE.

(f)    Vendor will promptly resolve directly with consumers all claims for property damage to a consumer's home caused by a Vendor employee during the performance of Home Delivery Services. When a Vendor receives notice of a claim for property damage from a consumer, it will (i) respond to the consumer and (ii) notify GE of such notice, both within 48 hours following receipt of sucy notice. Vendor is expected to investigate and promptly and fairly resolve all consumer property damage claims. If Vendor chooses to resolve the claim by repairing the damage in lieu of making a monetary settlement, it will utilize a reputable contractor and ensure the consumer is satisfied with the work performed.

16.    Limitation of Liability. Neither the Vendor nor GE shall, by reason of the termination or expiration of this Agreement, be liable to the other for compensation, reimbursement or damage of any kind on account of loss of profits or anticipated sales, or on account of expenditures, investments, leases or commitments in connection with the business or goodwill of the Vendor or GE,

- 12 -

or otherwise.    In no event, whether as a result of a breach of contract or warranty, the commission of a tort (including negligence) or otherwise, shall GE be liable for any consequential, incidental or special damages.

17.    Relationship of Parties. The parties hereto agree that  the status of the Vendor shall be that of an independent contractor. Neither the Vendor nor any of its officers, agents, representatives or employees acting for or on its behalf shall, under any circumstances, be or hold themselves out to be agents, servants, or employees of GE and shall have no authority to accept orders or to enter into any contract for the sale of the Products, or to make any other commitment on behalf of GE. The Vendor shall make no representations with respect to its relations with GE, except to represent that it is authorized to provide Home Delivery Services on behalf of GE. The Vendor agrees to take whatever measures are necessary to ensure that none of its officers, agents, representatives or employees acting for or on its behalf hold themselves out to be agents, servants or employees of GE or take any action which would imply authority to accept orders or enter into any contract for the sale of the Products, or to make any other commitment on behalf of GE.   The parties agree that GE has no power to supervise, give directions or otherwise regulate the Vendor's operations or its employees, except as contractually provided by this Agreement or for the security of Confidential Information. Vendor shall be solely responsible for payment of compensation and any benefits to its personnel and for any injury to its personnel in the course of their employment by the Vendor.   GE is not responsible for payment or withholding of any taxes or contributions imposed or required pursuant to any federal, state or local tax, social security or unemployment insurance laws with respect to Vendor's personnel.

18.    Vendor Compliance with Law. The Vendor shall obtain and maintain, at its own cost, all local, city, state and federal licenses and permits necessary to perform the Home Delivery Services. The Vendor shall, in the performance of its obligations under this Agreement, at all times and in all ways comply with all federal, state and local statutes, laws, ordinances, rules, and regulations, now or hereafter in effect, including those relating to its officers, agents, representatives and employees, and shall indemnify and save GE harmless from any and all liability, loss and expenses (including without limitation, penalties, fees, contributions, attorneys' fees and taxes) arising under or resulting from any such statute, law, ordinance, rule, or regulation, or violation thereof or noncompliance therewith.

19.    Indemnification.    Vendor shall indemnify and hold harmless GE, its affiliates, subsidiaries and customers and their respective directors, officers, employees and agents, together with their respective successors, assigns, heirs and representatives (collectively, the "Indemnitees") from and against any and all liabilities, losses, claims, demands, costs, damages and expenses (including without limitation reasonable attorneys' fees) of whatever nature (i.e., personal injury or death, property damage or loss) resulting from, caused by, arising out

- 13 -

of, extending to, connected with, related to or growing out of the performance of this Agreement by Vendor or Vendor's subcontractor, including without limitation, losses sustained or claimed to have been sustained by any person or persons (including the Indemnitees) and due, or claimed to be due, in whole or in part, to any act, omission or negligence of the Vendor or its directors, officers, employees or agents.

20.    Dispute Resolution. All disputes, controversies and questions directly or indirectly arising under, out of, in connection with or in relation to this Agreement or its subject matter, including without limitation, all disputes, controversies and questions relating to the validity, negotiation, interpretation, construction, performance, termination and enforcement of this Agreement (a "Dispute"), shall be resolved in accordance with this section, which shall be the sole and exclusive procedure for the resolution of any such Dispute.

(a)    The parties shall attempt in good faith to resolve any Dispute promptly by negotiation. If the matter has not been resolved within sixty (60) days of a party's written request for negotiation, either party may initiate arbitration as provided hereinafter.

(b)    Any Dispute which has not been resolved by negotiation as provided above shall, at the request of either party, be finally settled by arbitration under the Center for Public Resources Rules for Non-Administered Arbitration of Business Disputes in effect on the date of this Agreement, by three independent and impartial arbitrators, none of whom shall be appointed by either party. Notwithstanding Section 24 hereof, the law applicable to the validity of this arbitration provision, the conduct of the arbitration, the challenge to or enforcement of any arbitral award or order, and any other question of arbitration law or procedure shall be governed exclusively by the Federal Arbitration Act, 9 U.S.C. sections 1-16; however, the award can be modified or vacated on grounds stated in the Federal Arbitration Act or if the arbitration panel's findings of fact are not supported by substantial evidence or the conclusions of law are erroneous under the laws of the Commonwealth of Kentucky. The place of arbitration shall be Louisville, Kentucky. The parties agree that the federal and state courts located in the State of Kentucky shall have exclusive jurisdiction over any action brought to enforce this arbitration provision, and each party irrevocably submits to the jurisdiction of said courts. Notwithstanding the foregoing sentence, either party may apply to any court of competent jurisdiction, wherever situated, for enforcement of any judgment on an arbitral award.

(c)    To the fullest extent permitted by law, the arbitral panel is specifically denied and divested of any authority to award damages in excess of compensatory damages, and each party hereby irrevocably waives any right, whether in arbitration, judicial litigation, administrative proceedings, or otherwise, to recover any damages in excess of compensatory damages.

- 14 -

(d)    Except as time-barred under an applicable statute of limitation of lesser duration, any claim by either party shall be time-barred unless the asserting party commences an arbitration proceeding with respect to such claim within two (2) years after the cause of action has accrued.

(e)    Notwithstanding any other provision of this Agreement, the parties expressly agree that prior to the first meeting of the arbitral tribunal, GE shall have the right to apply to any state or federal court in Kentucky, or any other court that would otherwise have jurisdiction, for provisional or interim measures.

(f)    Each party hereby consents to a single, consolidated arbitration proceeding of multiple claims, or claims involving more than two parties. The prevailing party or parties in any arbitration conducted under this paragraph shall be entitled to recover from the other party or parties (as part of the arbitral award or order) its or their reasonable attorneys' fees and other reasonable costs of arbitration.

21.    Assignment and Change of Ownership.

(a)    This Agreement is personal in nature.  This Agreement and any rights and interests hereunder are nonexclusive.    This Agreement is not assignable by Vendor without the prior written consent of GE;  any attempt by Vendor to assign any of its rights or obligations hereunder or derived herefrom without  the prior written consent of GE shall be void.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their successors and assigns.

(b)    Any cumulative change(s) in ownership constituting more than thirty-two percent (32%) of Vendor's business, without the prior written consent of GE, shall be deemed to be an assignment of this Agreement.

22.    Subcontracting.  Any attempt by Vendor to subcontract any portion of the work covered by this Agreement without the prior written consent of GE shall be null and void.  Any Vendor who receives the prior written consent of GE to subcontract any portion of the work covered by this Agreement shall, as to such work, require its subcontractor to fully adhere to the provisions of this Agreement to the extent such provisions are applicable to the work subcontracted.  By way of example and not limitation, such provisions may include those set forth in Sections 1., 2., 3., 4., 5., 6., 7., 8, 11., 12., 13., 14., 15., 16., 17., 19., 20., 21., and 24. of this Agreement.

23.    Entire Agreement.    This Agreement and all the Attachments hereto constitute the entire agreement between the parties with respect to the subject matter hereof and supersede any and all prior or contemporaneous agreements, understandings, or proposals, whether oral or written, between the parties.  No change, modification, extension, renewal, ratification, rescission, termination,

- 15 -

discharge, abandonment or waiver of the Agreement or any provisions hereof, or any representation, promise or condition relative to this Agreement shall be binding upon GE unless made in writing and signed on its behalf by its authorized representative.

24.     Notices. Any notice required or permitted to be made or given by either party pursuant to this Agreement shall be made in writing and shall be deemed to have been duly given or delivered if delivered in person, deposited in the U.S. Mail, certified, return receipt requested, or first-class postage pre-paid, or sent by overnight mail or courier services, to the addresses as follows, or to such other address as provided in writing to the other party:

| If to GE: | GE Consumer & Industrial<br>Local Delivery Services<br>Appliance Park AP4-116<br>Louisville, KY 40225 |
|---|---|
| If to Vendor: | Guiney Delivery Services, Inc.<br>Attention: Pat Guiney<br>2045 South Arlington Heights Road, Suite 112<br>Arlington Heights, IL 60005 |

25.     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky without giving effect to the conflicts or choice of law provisions thereof.

26.     Offset. GE shall have the right at all times to set off any and all amounts owing from Vendor to GE, any component of GE or any of its affiliates, against any amount payable at any time by GE in connection with this Agreement.

27.     Section Headings. Section headings in this Agreement are for purposes of reference and convenience only, and shall not be construed as part of this Agreement or as a limitation of the scope of the particular sections to which such headings refer or of any other sections.

28.     Waiver. A failure or delay of either party hereto at any time to enforce, or insist upon strict compliance with, at any time any of the provisions of this Agreement, to exercise any option provided herein, or to require performance of any provisions hereof, shall not be deemed a waiver of, or continuing waiver of, any provisions of this Agreement.

29.     Severability. If for any reason any provisions of this Agreement or its application shall be held invalid, illegal or unenforceable in whole or in part by any court of competent jurisdiction, the validity, legality and enforceability of all other applications of that provision and of all other

provisions and applications hereof shall not in any way be affected or impaired.

30.    Financial Information and Audits – GE has the right at any reasonable time and upon reasonable notice to verify any data Vendor has submitted under this Agreement and shall have the right to request financial information of Vendor as deemed necessary by GE.

IN WITNESS WHEREOF, the parties by their duly authorized representatives have executed this Agreement as of the date first above written.

GENERAL ELECTRIC COMPANY
GE Consumer& Industrial                    Guiney Delivery Services, Inc.
                                           Vendor

By: _Chris Ramirri_                        By _Patrick Guiney_

Title: _Delivery Specialist_               Title: _President_

| Attachment 1 | Geographic Area, Space Recommendations, and Delivery Equipment |
| Attachment 2 | Exclusive Exception |
| Attachment 3 | Design of Truck |
| Attachment 4.A. | Office Equipment |
| Attachment 4.B. | Computer Equipment |
| Attachment 5 | Fee Schedule |
| Attachment 5a | GE Brand Parts |
| Attachment 6 | Limited Functional Operable Warranty |
| Attachment 7 | No Credit Scrap Form |

o\rmb\agreemts\proddel4-7-29-03.doc

- 17 -